# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7189 | **DATE** | 6/7/2001 |
| **CASE TITLE** | CARLO EDWARD IWEN, SR. vs. DUPAGE COUNTY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion And Order. The remaining defendants' motion for summary judgment is granted as to all remaining counts.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 1 2 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 96 |
| | Mail AO 450 form. | | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 01 JUN 11 PM 5: 44 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARLO EDWARD IWEN, SR., )
)
Plaintiff, )
) No. 98 C 7189
v. )
)
DuPAGE COUNTY, et al., ) Judge John W. Darrah
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carlo Edward Iwen, Sr. (Iwen), commenced an action, *pro se*, against DuPage County, John Zaruba, John Smith, Ann Nordstrom, Doctor John Oberhelman, Martin Manion, Judy Moore and Chemica Clark. Plaintiff alleges that he received inadequate care and treatment for his medical needs while in the DuPage County Correctional Center, in violation of his civil rights under 42 U.S.C. § 1983. Several defendants were dismissed from the suit by this Court in March 1999 and August 2000. Before this Court is the remaining defendants', Ann Nordstrom (Nordstrom), Dr. Nicholas Oberhelman (Dr. Oberhelman), and Judy Moore's (Moore) (collectively defendants) Motion for Summary Judgment.

Summary judgment is proper if " the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (*Miller*). However, the nonmovant must still come forward with evidence establishing the elements of his or her claim on



which he or she bears the burden of proof at trial. *Miller*, 203 F.3d at 1003.

In the instant case, plaintiff, still *pro se*, has failed to file a response to defendants' Motion for Summary Judgment. Therefore, all the material facts averred by defendants are deemed admitted because plaintiff failed to controvert such facts. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); L.R. 56.1(b)(3)(B). Although plaintiff failed to respond to defendants' Motion for Summary Judgment, the motion will only be granted if it demonstrates that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

Iwen was incarcerated at the DuPage County Jail (Jail) from October 24, 1996 through November 5, 1999, and December 27, 1996 through April 20, 1997. (Def.s' Statement of Facts ¶ 1). Nordstrom has been a registered nurse for over 42 years and is the Medical Administrator at the Jail. (Id., at ¶ 3). Dr. Oberhelman has been a medical doctor for over 30 years and is the medical doctor of the Jail. (Id., at ¶ 4). During plaintiff's second incarceration, Judy Moore was a staff nurse at the Jail. (Id., at ¶ 5).

On October 24, 1996, plaintiff was being transported from the Will County Jail to the DuPage County Jail. During the transport, the van carrying plaintiff was involved in a vehicular collision. (Def.s' 56.1(a)(3) Statement ¶ 6). Following the accident, plaintiff was taken to the emergency room at Silver Cross Hospital. (Id., at ¶ 7). An emergency room physician examined plaintiff's right knee and lower back and x-rays were taken. Plaintiff was found to have some lumbar tenderness but no evidence of spasms or scoliosis. Plaintiff's right knee was slightly tender but was not swollen, and there was no deformity; his range of motion was normal. Plaintiff was in the emergency room for 1 hour and 15 minutes and was released in good condition. (Id., at ¶ 8).

2

Plaintiff left the hospital on his own accord, without crutches, a walker, or a wheelchair. (Id., at ¶ 9).

Upon discharge from the emergency room, plaintiff was released to the custody of the DuPage County Sheriff's Department. (Def.s' 56.1(a)(3) Statement ¶ 9). Plaintiff was taken directly to the Jail. Plaintiff was not bleeding or suffering from any swelling, bruising, or discoloration upon his arrival at the Jail. Plaintiff remained incarcerated until November 5, 1996. During this time at the Jail, plaintiff did not complain about the medical treatment he received. (Id., at ¶ 10.).

On December 9, 1996, plaintiff saw a physician at the Joliet Veterans Administration Clinic (Clinic). The Clinic physician told plaintiff to take over-the-counter pain medication and referred plaintiff to see an orthopedic physician. (Def.s' 56.1(a)(3) Statement ¶ 12). On Friday, December 27, 1996, plaintiff was arrested for missing a previous court date. On Monday, December 30, 1996, plaintiff saw Dr. Oberhelman. During the visit, plaintiff informed Dr. Oberhelman that he had a March 17, 1997 appointment scheduled with an orthopedic physician at the Hines Veterans Hospital (Hines). (Id., at ¶ 13). Subsequently, Dr. Oberhelman ordered the nursing staff to confirm plaintiff's appointment at Hines. (Id., at ¶ 14).

Following the December 30, 1996 appointment with Dr. Oberhelman, plaintiff was provided with a walker to use while walking in the Jail and a wheelchair while in court. Plaintiff was offered the opportunity to be transferred to a handicapped cell, but he refused the offer, stating "I'm OK here; I don't want to move." (Def.s' 56.1(a)(3) Statement ¶ 14).

On January 2, 1997, the nursing staff confirmed plaintiff's appointment at Hines. In response to plaintiff's complaints, Dr. Oberhelman, on January 20, 1997, requested the nursing staff inquire if the Hines' appointment could be moved to an earlier date. A Jail nurse telephoned Hines, but

3

Hines refused to move the appointment because plaintiff's condition was not considered an emergency case. (Id., at ¶ 15).

On January 24, 1997, plaintiff was transferred to psychiatric segregation because of an alleged threat made by the plaintiff to another inmate. Plaintiff remained in psychiatric segregation until he was released from Jail. (Id., at ¶ 16).

During the time frame of December 27, 1996 through March 17, 1997, plaintiff was examined by Dr. Oberhelman on at least five occasions. He was also examined by another physician on at least two other occasions; he was seen and examined by the Jail psychologist or psychiatrist on at least seven occasions, and he was assessed by a nurse on at least five occasions. (Def.s' 56.1(a)(3) Statement ¶ 17).

On March 17, 1996, plaintiff was taken to Hines; at which time, he underwent an MRI scan of his lower back. The MRI showed that plaintiff suffered from disc herniation at level 4-5. A 1988 MRI showed the same disc herniation. Plaintiff was not admitted to the hospital; no new medical treatment was prescribed, and no new or different medications were prescribed by the Hines physician. (Def.s' 56.1(a)(3) Statement ¶¶ 18-19). On April 8, 1997, plaintiff was taken to Hines for a follow-up appointment. (Id., at ¶ 19).

Medication is administered by staff nurses at the Jail. Nordstrom never administered medication or medical care or treatment to plaintiff. (Def.s' 56.1(a)(3) Statement ¶ 21). In the absence of an emergency, the nurses at the Jail, including Nordstrom, do not have the authority to override a physician's orders, send a patient to an outside medical provider or medical facility without a physician's order, or order diagnostic testing for a patient without a physician's order. (Id., at ¶ 30). The medical staff does not have the authority to make decisions regarding where inmates

are to be housed. The medical staff may recommend to the correctional staff that an inmate be housed in a particular cell, but the correctional staff makes the final decision regarding an inmate's housing. (Id., at ¶ 31).

Throughout plaintiff's incarceration, plaintiff was prescribed the following medications: Robaxin, Motrin 600 mg, Mylanta, Cortosponinotic, Motrin 800 mg, Tylenol II, Tylenol III, Soma, and Antivert. (Def.s' 56.1(a)(3) Statement ¶ 20). Plaintiff alleges that he was incorrectly administered Triflouperzaine on five occasions while incarcerated. No physician has ever suggested that plaintiff suffered any harm as a result of taking a drug named Trifluoperzaine. (Id., at ¶ 22). While incarcerated, plaintiff did not submit a Health Services Request Form requesting he be moved to a handicapped cell, complaining of a neck injury, or asserting that he was administered the wrong medication. (Def.s' 56.1(a)(3) Statement ¶¶ 24-26). Intervention notes made while plaintiff was incarcerated indicate that, on multiple occasions, he walked in the pod without a walker, he got up from his bed without any difficulty, he ambulated to get medications with a steady gait and moved swiftly, and he walked in the pod with a normal gait. (Id., at ¶ 29).

To succeed in his § 1983 claim based on the treatment he received for his medical condition, plaintiff must demonstrate a genuine question of fact whether the defendants were deliberately indifferent to his medical condition. *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). The totality of an inmate's medical care is considered when determining whether prison personnel were deliberately indifferent to an inmate's serious medical needs. *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (*Walker*). Negligence, even gross negligence, is not sufficient to meet the deliberate indifference standard. *Soto v. Johnson*, 137 f.3d 980, 981 (7th Cir. 1998). In addition, an inmate cannot prevail on a claim of deliberate indifference in relation to medical treatment

5

without showing an injury. *Walker*, 233 F.3d at 502.

In the instant case, plaintiff claims that action and/or inaction by the three remaining defendants constituted deliberate indifference to his serious medical needs. Plaintiff's complaint alleges that following the accident he began experiencing lack of feeling in his left thumb, pain in the left shoulder, lower back, and left side of his head, loss of feeling in the right leg, inability to move part of his leg or foot, blurred vision, lightheadedness on exertion or while getting up, tunnel vision in the left eye, urinary incontinence, constipation, pain in his joints, his neck, abdominal area, and severe headaches.

I. Defendant Nordstrom

Plaintiff alleges that Nordstrom was deliberately indifferent to his severe medical needs because (1) she failed to place him in a handicapped jail cell and (2) failed to insure that he was provided medical care for his medical needs, including failing to personally order diagnostic testing of his back and not being aware that a nurse gave plaintiff the wrong medication.

Nordstrom's failure to place plaintiff into a handicapped jail cell was not deliberate indifference to plaintiff's medical needs. Plaintiff has provided no medical evidence that his condition required that he be placed in a handicapped jail cell. None of the doctors plaintiff received treatment from, including the Hines doctors, recommended that plaintiff be placed in a handicapped cell.

Furthermore, plaintiff was well aware that, if he had a medical problem or complaint, he could complete a Health Services Request Form, and that form would alert Jail personnel of his problem or complaint. In fact, plaintiff completed no less than 55 Health Services Request Forms while in the Jail and never sought to be placed in a handicapped cell. In addition, at some point,

plaintiff was given the opportunity to go to a handicapped jail cell, and he refused.

Nordstrom also lacked the authority to order that plaintiff receive diagnostic testing of his back. Neither the Illinois Administrative Code (68 Ill. Admin. Code tit. 68 § 1300.60) nor the Jail policy on diagnostic testing provide that a nurse has the authority to order diagnostic services. Such services must be ordered by a physician.

Assuming, argumendo, that Nordstrom had such authority, failure to order diagnostic testing before the already scheduled March 17, 1997 MRI would not constitute deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (*Estelle*) ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice."); *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (*Fromm*) ("differences in opinion among medical personnel regarding a patient's appropriate treatment do not rise to deliberate indifference").

Liability for the alleged receipt of incorrect medication also does not lie with Nordstrom. The doctrine of *respondeat superior* cannot be used to impose § 1983 liability on a supervisor. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997) (*Lanigan*). However, the Seventh Circuit has held that a supervisor can be liable for conduct by its subordinate if the supervisor is personally involved in the conduct. Supervisor liability will be found if the supervisor has knowledge of the subordinate's conduct and approves the conduct and the basis for it. *Lanigan*, 110 F.3d at 477. In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must ... act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicgo*, 856 F.2d 985, 992-93 (7th Cir. 1988).

7

Here, plaintiff alleges that a nurse gave him the wrong medication. Plaintiff admits that Nordstrom never administered the incorrect medication to plaintiff and that he never completed a Health Services Request Form complaining that he was administered the incorrect medication. More importantly, plaintiff admits that he never received incorrect medication after he informed Nordstrom that he thought he had received incorrect medication. There is no evidence that Nordstrom knew about the alleged administration of incorrect medication, facilitated it, approved it, condoned it, or turned a blind eye for fear of seeing it. The undisputed facts demonstrate that once she did become aware of the administration of incorrect medication, the same error failed to reoccur.

II. Defendant Dr. Oberhelman

Plaintiff alleges that Dr. Oberhelman was deliberately indifferent to his medical needs because (1) he failed to order diagnostic testing of the plaintiff before the March 17, 1997 Hines appointment and (2) failed to properly address an alleged neck injury suffered by plaintiff.

As stated above, a physician's failure to order testing does not amount to deliberate indifference and is insufficient to support a § 1983 claim. *See Estelle*, 429 U.S. at 107; *Fromm*, 94 F.3d at 261. 'Liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.' *Fromm*, 94 F.3d at 262, quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).

Here, Dr. Oberhelman knew that plaintiff was scheduled for an MRI in March 1996, and he also inquired whether the date could be changed. Hines informed Dr. Oberhelman that plaintiff's condition was not considered emergent so the appointment could not be changed. Furthermore, the March MRI indicated the same injury which plaintiff had been diagnosed with in 1988 (disc

8

herniation), and his medical treatment was not adjusted after the March MRI. Therefore, even if an MRI had been taken in January or February, plaintiff's condition and treatment would have remained the same.

Plaintiff's claim that Dr. Oberhelman improperly treated his alleged neck injury also fails. While incarcerated, plaintiff never requested medical attention for his neck, never raised a complaint about neck pain, and never completed a Health Services Request Form requesting treatment for a neck injury. Plaintiff also admits that his neck injury was not diagnosed until 1999 and that, prior to 1998, the only treatment he received for his neck was pain medication and anti-inflammatories – the same medication he received from Dr. Oberhelman in 1996 and 1997.

III. Defendant Moore

Plaintiff alleges that he received the incorrect medication, Trifluoperazine, on five occasions. At his deposition, he testified that he could not state when he was administered the incorrect medication or about the number of times Nurse Moore personally gave him the incorrect medication Assuming, for purposes of summary judgment, that plaintiff was incorrectly administered Trifluoperazine on five occasions by Moore, plaintiff's claim still fails because he admits that he has suffered no injury from the ingestion of Trifluoperazine. A plaintiff that "cannot show injury ... cannot make out a claim of deliberate indifference relating to his treatment." *Walker*, 233 F.3d at 502.

For the reasons stated above, the remaining defendants' Motion for Summary is granted as to all remaining counts.

Dated: June 7, 2001

JOHN W. DARRAH
United States District Judge

9